UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>IGNACIO LEAL GARCIA<br><br>                            *Defendant*. | Case No. 04-cr-446-42 (ACR) |

## MEMORANDUM OPINION AND ORDER

In six filings, Defendant Ignacio Leal Garcia petitions this Court for post-conviction relief: a Motion to Appoint Counsel, Dkt. 532; an Amended Motion to Vacate Sentence under 28 U.S.C. § 2255 (Amended § 2255 Motion), Dkt. 540; Dkt. 542;[1] a Motion to Reduce Sentence Pursuant to a U.S. Sentencing Commission Amendment (Sentence-Reduction Motion), Dkt. 544; Dkt. 546;[2] and a Motion for Compassionate Release (Compassionate-Release Motion), Dkt. 545 (collectively, "Motions").[3]

Upon consideration of these Motions, the entire record herein, the applicable law, and the reasons set forth below, the Court **DENIES** Defendant's Motions. The Court adds that it commends Defendant for taking courses, working, and otherwise making productive use of his time in federal custody.

---

[1] For purposes of this Memorandum Opinion and Order, the Court will cite to Dkt. 542 when referring to Defendant's Amended § 2255 Motion, because it contains the entirety of Defendant's filing in Dkt. 540, as well as additional materials.
[2] Because Dkt. 546 is substantially similar to Dkt. 544 and Dkt. 546 was later-filed, the Court will cite to it when referring to Defendant's Sentence-Reduction Motion.
[3] Based on its language, the Court construes Dkt. 545 as a motion for compassionate release.

1

## I.  BACKGROUND

In September 2011, a jury convicted Defendant of narcotics conspiracy in violation of 21 U.S.C. §§ 952, 959, 960, 963, for his involvement in the Fuerzas Armadas Revolucionarias de Colombia (the Revolutionary Armed Forces of Colombia, or FARC) between the late 1990s and 2009.  Dkt. 405 ¶¶ 1, 5–13, 19.  For a period, Defendant served as the Chief Financial Officer of FARC's 10th Front.  *Id.* ¶ 19.  In that role, Defendant "overs[aw] all financial matters for the Front, including matters concerning narcotics manufacturing and distribution" and "purchasing munitions, explosives, weapons and supplies for the Front."  *Id.* ¶¶ 10, 19–20.  All told, Defendant "organized the manufacture and exportation of thousands of kilograms of finished cocaine."  *Id.* ¶ 23.  The Court assumes familiarity with the remainder of the underlying factual background of this case.

On January 27, 2012, the Court sentenced Defendant to 294 months (24.5 years) of incarceration and 60 months (5 years) of supervised release.  *See* Dkt. 422.[4]  Defendant filed a direct appeal.  In the D.C. Circuit, Defendant raised various evidentiary issues and—most relevant here—whether the Court erred in failing to "instruct the jury to make a finding as to the quantity of drugs involved in the conspiracy that was reasonably foreseeable to" Defendant.  *United States v. Garcia*, 757 F.3d 315, 320 (D.C. Cir. 2014).  Because Defendant had not objected on this basis at trial, the Circuit applied plain-error review.  *Id*. at 321.  The Circuit determined that "overwhelming" evidence presented at trial supported the conclusion that it was "reasonably foreseeable to Garcia that the massive drug trafficking operation he managed involved at least five kilograms of cocaine."  *Id*.  In fact, the Circuit noted that the district court had concluded that Garcia was personally implicated in the manufacture and importation of more

---

[4] Judge Thomas F. Hogan presided over Defendant's trial and imposed his sentence.

than 7,000 kilograms of cocaine. *Id*. Therefore, without affirmatively deciding that the Court's lack of jury instruction on the issue amounted to error under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Circuit declined to reverse the Court on plain-error review. *Id*.

Defendant is currently 56 years old and incarcerated at Victorville Medium II FCI. *Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Aug. 13, 2025) (enter "31144-016" in "BOP Register Number" field). He is slated for release on July 22, 2029. *Id*.

Between January 2022 and August 2024, Defendant filed the instant Motions pro se. The Court considers each in turn.

## II. ANALYSIS

### A. Motion to Appoint Counsel

Defendant first requests the appointment of counsel in connection with his Amended § 2255 Motion. Dkt. 532. At trial and on direct appeal, the Constitution guarantees criminal defendants the right to counsel. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). With respect to the instant Motions, no such right attaches. In addition, Defendant has not otherwise demonstrated that "the interests of justice . . . require" the appointment of counsel at this stage. 18 U.S.C. § 3006A(a)(2)(B).

Accordingly, the Court DENIES Defendant's Motion to Appoint Counsel.

### B. Amended § 2255 Motion

Defendant next moves to vacate his sentence under 28 U.S.C. § 2255 on the grounds that "his trial counsel's performance during representation fell below an objective standard of reasonableness, and prejudice resulted." Dkt. 542 at 13.

3

On collateral review, defendants "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Defendant bears the burden on a § 2255 motion of demonstrating both elements of ineffectiveness—"deficient performance" on the part of counsel and resulting "prejudice." *Strickland v. Washington*, 466 U.S. 668, 696, 700 (1984).

Here, Defendant alleges two instances of deficient performance, both tied to his decision to stand trial. First, he asserts that trial counsel failed to inform him that the Court could sentence him based upon the total quantity of cocaine attributable to the conspiracy, even if the jury made no finding that Defendant himself could have reasonably foreseen that his offense involved five kilograms or more of cocaine. Second, he argues that counsel had not advised him that he could enter an open plea without a formal agreement with the Government. Dkt. 542 at 46. Defendant contends that counsel's actions prejudiced him because he otherwise would have entered an open plea of guilty. *Id*. That plea, he says, would have rendered him eligible for a two-level adjustment for timely acceptance of responsibility under the U.S. Sentencing Guidelines (Sentencing Guidelines or Guidelines). *Id*.[5]

Even assuming, for the sake of argument, both that counsel failed to so advise Defendant and that such conduct constitutes deficient performance, Defendant can prove no resulting prejudice. To show prejudice, Defendant must demonstrate that "but for the ineffective advice of counsel[,] there is a reasonable probability that" Defendant would have entered an open plea, "the court would have accepted" such a plea, and "that the conviction or sentence, or both,

---

[5] The parties refer to a three-level adjustment under Guidelines § 3E1.1. *See, e.g.*, Dkt. 542 at 14-15; Dkt. 552 at 18. An additional one-point decrease would apply if the government makes a motion "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct." U.S. Sent'g Guidelines Manual § 3E1.1(b).

4

under" his open plea "would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (discussing the prejudice standard with respect to a plea agreement that, hypothetically, would have been struck but for counsel's deficiency).

Here, Defendant offers no factual support—beyond self-interested, post-hoc averments—for his claim that he would have otherwise entered a guilty plea. For the purposes of *Strickland*, such post-hoc testimony alone cannot establish that he would have entered a different plea. *See United States v. Knight*, 981 F.3d 1095, 1101 (D.C. Cir. 2020). Additionally, the sentencing Court noted that Defendant "went on trial to challenge the extraterritorial reach of [U.S.] federal law" and because under the proffered plea agreement, "he would not have a sentence comparable to" another Defendant in what he argued was a similar case. Dkt. 458 at 33, 36. Defendant himself confirms these rationales. He represents in his Amended § 2255 Motion that he "declined to entertain a plea offer because the anticipated Guideline range discussed was more than twenty years, and because [he] wished to challenge jurisdiction." Dkt. 542 at 23–24. Nothing in the record indicates that those reasons would not have compelled Defendant to proceed to trial even if counsel had failed to advise Defendant as he claims.

And even had the Defendant entered an open plea of guilty, he still cannot establish prejudice. Defendant argues that he would have been entitled to a two-level downward adjustment for acceptance of responsibility under U.S. Sentencing Guidelines Manual § 3E1.1(a). Maybe so. But such an adjustment would not have impacted his resulting Guidelines range.

The Court accepted Probation's calculation of Defendant's initial offense level at 46, which it acknowledged automatically reduces to 43. Dkt. 458 at 26, 39; *see* Dkt. 405 ¶¶ 40, 43.

Forty-three represents the uppermost bound of offense levels for which the Sentencing Table provides. *See* U.S. Sent'g Guidelines Manual ch. 5, pt. A. Thus, the Application Notes for the Sentencing Table instructs that "[a]n offense level of more than 43 is to be treated as an offense level of 43." *Id*. ch. 5, pt. A n.2. So, a hypothetical two-level downward adjustment of the initial calculation of 46 to 44 would still, following that rule, have yielded an ultimate offense level of 43. And the Guidelines range associated with that offense level and Defendant's criminal history category of I was life imprisonment. *Id*.; *see* Dkt. 405 ¶¶ 70–71. Whether or not the Court applied the two-level downward adjustment, the Guidelines recommended life in prison for Defendant.

Ultimately, the Court imposed a 24.5-year sentence—well short of life.[6] Defendant has not established that he would have entered an open plea of guilty in different circumstances, nor that the Court would have sentenced him in that case to a term "less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164.

The Court DENIES the Amended § 2255 Motion.

### C. Sentence-Reduction Motion

Defendant next moves for a sentence reduction based on the U.S. Sentencing Commission's lowering the Guidelines range for his offense conduct. Dkt. 544; Dkt. 546. A federal court "may . . . modify a term of imprisonment" for "a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

---

[6] At Defendant's sentencing, the Court adjudicated disputes between the government and the Defendant regarding the Guidelines calculations. Dkt. 458 at 4, 57–69. It considered the Guidelines range (life imprisonment), the extradition agreement in which the Government explicitly agreed not to seek a life sentence against the Defendant, and the relevant sentencing factors. *Id*.

Courts apply a two-step test to evaluate requests for modification. First, the Court must "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon v. United States*, 560 U.S. 817, 824, 827–830 (2010). Second, if a defendant is eligible, the Court must take into account the sentencing factors, 18 U.S.C. § 3553(a), to determine whether to grant a reduction in whole or in part. *Id*.

A recent, retroactive amendment to Guidelines § 4C1.1 (Amendment 821), titled "Adjustment for Certain Zero-Point Offenders," provides for a two-level decrease in a defendant's offense level in certain circumstances. U.S. Sent'g Guidelines Manual § 4C1.1; *id*. § 1B1.10(d) & n.7. Defendant, however, only meets some of the eleven enumerated criteria. Defendant, for example, "did not receive any criminal history points," *id.* § 4C1.1(a)(1), and the relevant "offense of conviction is not a sex offense." *Id.* § 4C1.1(a)(5). But Defendant did "possess . . . a firearm or other dangerous weapon" in connection with the offense. *Id.* § 4C1.1(a)(7); *see* Dkt. 458 at 15–17. He also "receive[d] an adjustment" for his aggravating role. *Id.* § 4C1.1(a)(10); *see* Dkt. 458 at 29–33. Defendant therefore does not qualify for an adjustment under Amendment 821.

The Court DENIES Defendant's Sentence-Reduction Motion.

### D. Compassionate-Release Motion

Defendant also moves for compassionate release, arguing that intervening changes in law now render his sentence "unusually long." Dkt. 545 at 1–4. A federal court may modify a defendant's sentence (1) "if it finds that . . . extraordinary and compelling reasons warrant such a reduction"; and (2) "after considering the [sentencing] factors set forth in section 3553(a) to the

7

extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i).[7] In this case, neither consideration weighs in favor of the Defendant.

### 1. This case presents no extraordinary and compelling reasons for release.

The Sentencing Guidelines advise that "an unusually long sentence" may present an "extraordinary and compelling reasons" warranting a sentence reduction. U.S. Sent'g Guidelines Manual § 1B1.13(b)(6). The Guidelines define an "unusually long sentence" as one where, among other requirements, a subsequent "change in the law" "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.*[8]

Defendant relies on *United States v. Stoddard*, 892 F.3d 1203 (D.C. Cir. 2018), to argue a change in law. Dkt. 545 at 1–2. Years after Defendant's direct appeal, *see supra* pp. 2–3, the D.C. Circuit considered "whether an individualized jury finding as to the quantity of drugs attributable to (*i.e.*, foreseeable by) an individual defendant is required to trigger a mandatory minimum, or if it is sufficient for the jury to find that the conspiracy as a whole resulted in distribution of the mandatory-minimum-triggering-quantity." *Stoddard*, 892 F.3d at 1219. Defendant had presented a similar issue on appeal, but the Circuit determined he had not established error under plain-error review. *See supra* pp. 2–3.

Confronted squarely with the legal question, the Circuit ultimately rejected the "conspiracy-wide approach" in favor of the "individualized" one. *Id*. at 1220. It reasoned that

---

[7] A prerequisite to this form of relief is a defendant's "full[] exhaust[ion]" of "all administrative rights." 18 U.S.C. § 3582(c)(1)(A). Defendant provides evidence that he petitioned the Bureau of Prisons to bring a compassionate-release motion on his behalf. *See* Dkt. 545 at 7–9. The government does not contest Defendant's meeting of the exhaustion requirement.

[8] Defendant "has served at least [ten] years of the term of imprisonment," as this provision of the Guidelines also requires. U.S. Sent'g Guidelines Manual § 1B1.13(b)(6).

8

"a core principle of conspiratorial liability" is "that a co-conspirator may be held liable for acts committed by co-conspirators during the course of the conspiracy only when those acts are . . . reasonably foreseeable to the defendant." *Id*. at 1221 (cleaned up) (citation omitted).  So, if Defendant were tried today, he would be entitled to a jury finding on the drug quantity foreseeable to him individually, because a quantity of five kilograms or more of cocaine increases his mandatory minimum to ten years.  *See* 21 U.S.C. § 960(b)(1).

How much that factors into the compassionate-release calculus is unclear.  The D.C. Circuit has held that district courts may not considered non-retroactive changes in sentencing *statutes* in adjudicating a compassionate-release motion, because doing so contradicts "Congress's judgment that the unamended statute remains appropriate for previously sentenced defendants."  *United States v. Jenkins*, 50 F.4th 1185, 1198 (D.C. Cir. 2022).  Here, Defendant raises a new rule that the D.C. Circuit—not Congress—announced via *Stoddard*.

In any case, the Court's consideration of *Stoddard* would not aid Defendant.  The sentencing Court imposed a 24.5-year sentence.  That is, certainly, greater than the mandatory minimum of ten years to which the Defendant argues he was erroneously exposed.  But the jury instruction that Defendant argues the Court erroneously omitted is subject to harmless-error analysis.  *See United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 208 (D.C. Cir. 2013).

Compare *Stoddard* and Defendant's own direct appeal.  In *Stoddard*, the Circuit concluded that "[t]he District Court's error was not harmless . . . because the evidence was far from overwhelming with respect to the quantity of heroin involved in the conspiracy that was reasonably foreseeable to" the individual defendants in that case.  892 F.3d at 1222.  Not so in Defendant's case.  There, "overwhelming" evidence—to borrow from the D.C. Circuit's opinion—presented at trial indicated that Defendant could "reasonably foresee[]" "that the

9

massive drug trafficking operation he managed involved at least five kilograms of cocaine," even if the jury had made no specific drug-quantity finding. *Garcia*, 757 F.3d at 321. Were Defendant to get the benefit of *Stoddard*, any error would still be harmless.

The Court, then, cannot say that the "sentence *likely* to be imposed" on the Defendant, were *Stoddard* to have applied to him, would have differed from the sentence he actually received. U.S. Sent'g Guidelines Manual § 1B1.13(b)(6) (emphasis added). It has even less basis to find a "gross disparity" between the actual and hypothetical sentence. Defendant has established no extraordinary and compelling reason warranting release.[9]

### 2.  Section 3553 sentencing factors do not compel release.

Neither do the § 3553 sentencing factors support release. A court may grant a request for compassionate release only "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see Jenkins*, 50 F.4th at 1192. Though the Court has already found no extraordinary and compelling reason to grant Defendant's Motion, for completeness, it reviews the sentencing factors.

Defendant's Motion raises two arguments that touch upon the sentencing factor instructing the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). First, he asserts that his sentence "far exceeds the sentence of a similarly situated" individual convicted in a different, FARC-related prosecution. Second, he argues that his

---

[9] Defendant also asserts that his deportation following release serves as punishment. Dkt. 546 at 6–7. The Guidelines do not explicitly list deportation risk as an extraordinary and compelling reason warranting a sentence reduction. *See* U.S. Sent'g Guidelines Manual § 1B1.13(b). The Court does not find that in this instance, deportation risk would alter its extraordinary-and-compelling-reason analysis. *See id*. § 1B1.13(b)(5) (authorizing release for "other reasons" (altered capitalization)).

sentence is unusually long relative to the mean or median sentence in the District of Maryland for drug-trafficking crimes. See Dkt. 545 at 4.

Defendant's first contention is not new. The sentencing Court had carefully considered Defendant's assertion that he should not receive more time than Anayibe "Sonia" Rojas Valderrama, whom another judge sentenced in a separate case. See Dkt. 458 at 38–48, 61–62. Ultimately, the Court determined that Valderrama's sentencing had little bearing on Defendant's circumstances, *id*., and "ma[d]e an individualized assessment based on the facts presented," *Gall v. United States*, 552 U.S. 38, 50 (2007). Defendant provides no new basis to retread that analysis.

As to Defendant's second argument, the Court cannot discern what set of drug-trafficking crimes count in Defendant's reported statistics. The sentencing Court, however, considered Defendant's individual characteristics and the nature of his criminal conduct. Among other factors, it weighed his "heavy involvement in running a massive drug ring" as a "financial leader." Dkt. 458 at 61. It explained that Defendant "is the one that collected, through his people working for him, the drugs from the farmers; arranged to pay them; the one that took it to the labs and had the labs refine the cocaine; the one[] that arranged for the transportation of the cocaine and dealt with the other drug dealers to move the drugs out; received the money back and distributed the monies; made arrangements or munitions, purchase and other supplies." *Id*. at 63. Ultimately, "of the various Colombian cases [it] ha[d] handled," Defendant's case presented "probably the strongest evidence" the Court "ha[d] seen to date of a person's involvement." *Id*. Because the Court tailored its sentence to the serious nature of Defendant's involvement in FARC's activities, any purported deviation from sentences for drug-trafficking crimes generally cannot serve as the basis for compassionate release.

11

Lastly, the Court addresses Defendant's submission, in a different filing, regarding his rehabilitation. Defendant asserts that he "has participated in many educational courses, constantly worked," and "has had no disciplinary infractions" during his incarceration. Dkt. 546 at 4–10. For the reasons set forth above, the Court cannot order release. The Court, however, commends Defendant for making fruitful use of his time in federal custody and encourages him to continue doing so.

The Court DENIES the Compassionate-Release Motion.

### III.  CONCLUSION AND ORDER

Upon careful consideration of Defendant's Motions for post-conviction relief, the Court hereby

**DENIES** Defendant's Motion to Appoint Counsel, Dkt. 532; Defendant's Amended § 2255 Motion, Dkt. 540; Dkt. 542; Defendant's Sentence-Reduction Motion, Dkt. 544; Dkt. 546; and Defendant's Compassionate-Release Motion, Dkt. 545.

**SO ORDERED.**

This is a final appealable Order. *See* Fed. R. App. P. 4(b).

Date: September 11, 2025

                                                      ANA C. REYES
                                                      United States District Judge